IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 5, 2008

## MYRNA JILL JOHNSON HALLE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 4828   Joseph H. Walker, III, Judge**

_____

**No. W2007-01897-CCA-R3-PC**

_____

A Tipton County jury convicted Petitioner, Myrna Jill Johnson Halle, of reckless aggravated assault. The conviction stemmed from an altercation between Petitioner and her live-in boyfriend, Dennis Vance Gulley, during which Petitioner shot the victim in the head.  Following the trial, the trial court sentenced Petitioner to twelve years in the Tennessee Department of Correction.  Petitioner subsequently filed a petition for post-conviction relief alleging ineffective assistance of counsel. After an evidentiary hearing, the post-conviction court denied the petition.  After a thorough review of the record on appeal, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and DAVID H. WELLES, J., joined.

Tracey A. Brewer-Walker, Ripley, Tennessee, for the appellant, Myrna Jill Johnson Halle.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany, Assistant Attorney General, and Elizabeth Rice, District Attorney General and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was convicted of reckless aggravated assault following an altercation with her live-in boyfriend at a party on July 4, 2003.  *State v. Myrna Jill Johnson Halle*, No. W2006-00195-CCAMR3CD, 2006 WL 3731193, at *1 (Tenn. Crim. App., at Jackson, Dec. 15, 2006).  During the party, Petitioner and the victim, Dennis Vance Gulley, engaged in a physical altercation.  *Id.* at *1-3. At some point, Petitioner announced she was going to shoot Mr. Gulley and went inside the house. Shortly thereafter, witnesses saw the victim running out of the house with a rag on his head saying, "She shot me."  *Id.* at *1-3.  Mr. Gulley ran to a friend's house and was eventually taken to the

hospital in an ambulance. *Id.* at *1. As a result of the shooting, the victim had two bullet holes in the back of his head that were two or three inches apart. *Id.* at *2. At the conclusion of her trial, a Tipton County Jury convicted Petitioner of reckless aggravated assault. *Id.* at *5. The trial court sentenced Petitioner to twelve years. *Id.* at *6. Petitioner was unsuccessful on appeal from both her conviction and her sentence. *Id.* at *1.

**Petition for Post-conviction Relief**

On April 11, 2007, Petitioner filed a pro se Petition for Post-conviction Relief. The post-conviction court appointed counsel, and, on June 12, 2007, appointed counsel filed an amended petition for post-conviction relief. On July 13, 2007, the post-conviction court held an evidentiary hearing on the petition.

There were three witnesses at the evidentiary hearing. Danny Hogan, the General Sessions Program Director for Tipton County, testified that in 2002 and 2003, he was employed by Professional Counseling Services in Tipton County. He was involved with the Petitioner's alcohol and drug therapy treatment. During the sessions, Mr. Hogan heard Petitioner complain about her live-in boyfriend being both verbally and physically abusive. She also complained that he would not pay his portion of the rent. Trial counsel never approached Mr. Hogan to investigate any complaints Petitioner made against the victim during the therapy sessions.

Petitioner testified at the evidentiary hearing. She stated that Mr. Gulley was the live-in boyfriend whom she referenced in the therapy sessions with Mr. Hogan. Petitioner told trial counsel that she believed her history of abuse caused by Mr. Gulley would be relevant to her defense. She testified that she referred trial counsel to her records with her counselor and psychiatrist. She also stated that counsel did not subpoena the victim's medical records concerning treatment of his wounds. In addition, she maintained that when trial counsel came to see her, he never produced any photographs or forensic evidence for her. Petitioner believed that trial counsel did not investigate her case in order to form a defense strategy. She stated that she spoke with trial counsel three times before trial. Petitioner stated that trial counsel did explain the charge and that it was a severe offense. However, Petitioner claimed that trial counsel did not explain that her previous convictions would lead to a sentence as a career offender. Petitioner also testified that trial counsel said he felt ill at the trial. Petitioner claimed that trial counsel stated he felt like he was having a heart attack. On the day of the trial, Petitioner did not believe that she or her attorney was ready for trial because trial counsel had not completed an investigation so that proper evidence could be brought before the court. Petitioner could not recall trial counsel raising any issue of self-defense based upon her confrontation over the gun with the victim or the history of abuse perpetrated by the victim.

On cross-examination at the evidentiary hearing, Petitioner stated that she could not remember that a notice had been filed concerning her status as a career offender. Petitioner claimed that she did not realize how many prior felonies she had and that the felonies would affect her range of punishment. She also could not recall telling trial counsel that she was not the same person as

Myrna Johnson who had received forgery convictions in Tipton County. Petitioner did not remember trial counsel bringing her any sort of settlement offer from the State and did not know whether such an offer was made. Petitioner stated that she did testify at trial and that she knew the same information elicited at the therapy sessions. Petitioner did attempt to bring up at trial the abuse perpetrated by Mr. Gulley, the fact that he was in anger management, and the fact that he had been arrested for domestic violence. However, she stated that she was not able to finish her statement with regard to the domestic violence arrest. Petitioner admitted that sometime before trial she was arrested and incarcerated in Mississippi. She did remember missing her initial trial date but could not remember if the date occurred during her incarceration. With regard to her allegation that trial counsel was ill at trial, she stated that trial counsel complained of his chest hurting and trial counsel "kept having to go get water." She also contended that trial counsel was ineffective for not getting her records to show that she had been in ongoing therapy sessions for abuse. She also believed trial counsel was ineffective because he did not raise the issue that the victim wanted to drop the charges. According to Petitioner, the victim was not asked this question at the trial.

Trial counsel was the final witness at the evidentiary hearing. He testified that he spoke with Petitioner "considerably more than three times." He stated that he was representing Petitioner on more than one matter at that time, so he could not recall exactly how many times they met with regard to this case. Trial counsel stated that he did speak with the victim and Petitioner and their situation was a typical domestic abuse situation. Trial counsel also stated that he approached the State because the victim told trial counsel that he did not want to pursue the charges. Trial counsel stated that the relationship between Petitioner and Mr. Gulley was part of his trial strategy because Mr. Gulley testified that he was not sure Petitioner shot him and that he was under the influence of alcohol. Trial counsel did not remember Petitioner directing him to Professional Counseling, but he did remember speaking with her about the history of abuse. Trial counsel testified that he chose not to pursue the abuse angle as a trial strategy because Mr. Gulley was already trying to help Petitioner at trial. Trial counsel stated he was afraid of alienating the jury if they began accusing the victim of the abuse because he was already testifying in Petitioner's favor. Trial counsel did approach the State to get some sort of plea agreement, but the State had no interest in offering anything. Trial counsel did not subpoena Mr. Gulley's medical records because there was no dispute that he had been shot. Trial counsel's goal was to get a conviction of reckless endangerment or a lesser-included offense of reckless endangerment. Therefore, he did not pursue a theory as to whether the shooting was an accident. Trial counsel also referenced the fact that at the time of the incident, at least one witness heard Petitioner state that she was going to shoot the victim. Trial counsel stated that he did feel ill the day of the trial. However, he stated that he does not have any heart problems. He believed that he had a combination of a sinus infection and back problem at the time of the trial. He stated that he was coughing quite a bit that day. Trial counsel stated that he thought he could have done better if he had been in perfect health, but he did not think it impaired him to the point of being ineffective. If he had felt so impaired, he would have informed the judge. Trial counsel felt like he had enough time to investigate. He pointed out that most of the facts were not at issue. Trial counsel had problems keeping in contact with Petitioner because she would "drop out of sight." He later found out that she had been incarcerated in Mississippi. Trial counsel testified that the only offer made by the State was to plead as charged. He also testified that the State filed the career

offender notice and that he informed Petitioner. Trial counsel also told Petitioner what her prior criminal history was that made her a career offender. Petitioner did inform trial counsel that all the convictions alleged by the State were not against her, but he pulled the underlying warrants in Tipton, and they were indeed her.

The post-conviction court denied and dismissed the petition by written order. The post-conviction court made the following findings of fact:

Petitioner alleges that counsel failed to investigate. [Trial counsel] testified about his investigation and the witnesses he spoke with. The facts were not in dispute. Counsel had difficulty maintaining contact with his client. During a portion of the time Petitioner was incarcerated in Mississippi on other charges. Petitioner has failed to show prejudice by any failure in this regard. She states that the vicitm's medical records should have been subpoened to court. However, [P]etitioner shot the victim in the head. The state only had to show bodily injury, not serious bodily injury. Petitioner failed to show how the medical records would have helped, or that the result would have been different.

Petitioner alleges that counsel should have required the testimony of Mr. Hogan, to show that the Petitioner has complained about the abusive conduct of the victim. The victim, Mr. Gulley, testified he lived with Petitioner and her mother. He argued with Petitioner and was hit in the head. He went in the house and testified he was shot from behind. Petitioner testified she fought with the victim. She asked the victim to stop hurting her and went to get her gun. She testified she shot the gun.

Petitioner failed to show how the testimony of Mr. Hogan would have been beneficial, or that counsel was deficient in not present[ing] this testimony. It would have been only statements of Petitioner made before trial. Petitioner testified at trial.

Mr. Cartwright testified he spoke with Mr. Gulley who was trying to help the [P]etitioner before trial and did not want her prosecuted. The jury heard the testimony and found [P]etitioner guilty of a lesser included offense.

No plea offer was made by the state to the defendant. Therefore counsel was not deficient by failing to discuss a plea offer with [P]etitioner, or in discussing the possibility of probation. Petitioner is a career offender and has multiple convictions and has been through several court proceedings.

Petitioner complains she was denied a speedy trial. She failed to appear for her original trial date and her bond was called. It was also called at another time for failure to appear or maintain contact with her attorney. She was indicted in March

-4-

2004, and had jury trial in January 2005, which was not undue delay. She has failed to demonstrate any prejudice by the trial date.

Petitioner filed a timely notice of appeal.

## ANALYSIS

On appeal, Petitioner argues that the post-conviction court erred in denying and dismissing her petition for post-conviction relief. In her brief, Petitioner argues that trial counsel was ineffective because he did not call her counselor, Mr. Hogan, to testify at trial; he did not call her psychiatrist, Dr. Knott, to testify at trial; he did not investigate the victim's medical records to prepare a self-defense theory; he did not investigate any self-defense issues; he only met with her three times prior to trial; and he did not call an expert witness regarding domestic abuse.

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law

and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

We first address Petitioner's arguments with regard to trial counsel's failure to call her psychiatrist, Dr. Knott, and his failure to call an expert to testify about domestic abuse mentality. As Petitioner concedes in her argument concerning an expert witness on domestic abuse, it is the petitioner's duty to produce a witness at the post-conviction hearing to support her argument that trial counsel failed to present a witness at trial. *State v. Black*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Petitioner presented neither an expert on domestic abuse mentality nor Dr. Knott. Therefore, Petitioner has failed to demonstrate counsel's ineffectiveness in not calling these potential witnesses.

Petitioner also argues that trial counsel was ineffective in failing to present Mr. Hogan at trial. Mr. Hogan was a witness at the post-conviction hearing. As stated above, he testified that he remembered that Petitioner mentioned that her live-in boyfriend was abusive. Trial counsel stated that he decided not to present evidence of domestic abuse at trial as part of his trial strategy. Trial counsel testified that Mr. Gulley was being very helpful to the defense both before and during trial. Trial counsel did not want to alienate the jury and damage Petitioner's credibility by painting the victim in a bad light when he was being helpful to Petitioner's case. As stated above, this Court may not second guess a reasonably based trial strategy. *See Adkins*, 911 S.W.2d at 347. We conclude that trial counsel was adequately prepared for trial and that his hesitancy to paint the victim in a bad light was well-founded in a case where there was virtually no dispute as to the underlying facts. Therefore, Petitioner cannot meet the first prong that trial counsel's performance was deficient in this regard. In addition, even if his performance was deficient, Petitioner would be unable to prove prejudice because she was able to and did testify about the history of abuse between her and the victim. Therefore, evidence of the history of abuse was presented to the jury.

The same analysis applies to Petitioner's arguments concerning trial counsel's failure to prepare a self-defense theory or investigate self-defense issues. Trial counsel stated that the victim testified in an attempt to help Petitioner. He stated that he did not want to paint the victim in a bad light and damage his credibility with the jury. Petitioner specifically argues that trial counsel should have obtained the victim's medical records to support a theory of self-defense. Trial counsel stated that the records would have been of no help because at least one witness stated that he heard Petitioner say she was going to shoot the victim. In addition, there was no dispute at trial that the victim had been shot in the back of the head. Trial counsel adequately investigated the case.

Furthermore, trial counsel's decision not to attack the victim could also be considered trial strategy. There is adequate evidence in the record to support the conclusion of the post-conviction court. We find that the services rendered Petitioner were not deficient. In addition, even if the services were deficient, Petitioner, once again, cannot prove prejudice. There was evidence presented to the jury through witnesses that she and the victim were involved in an altercation immediately prior to the shooting. For this reason, she cannot complain that the result would have been different because there was evidence of the altercation presented to the jury. Therefore, this issue is without merit.

With regard to Petitioner's argument that trial counsel was ineffective due to meeting with her only three times, we also find sufficient evidence to support the post-conviction court's conclusion. Trial counsel testified that he met with her more than three times and that he was representing her on more than one charge. He said that they often discussed more than one charge at one visit. The post-conviction court clearly found trial counsel more credible. Issues of credibility are an issue decided by the trier of fact, in this case the post-conviction court. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn.1991). Therefore, this issue has no merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JERRY L. SMITH, JUDGE